IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEREMY LOCKETT,

       Plaintiff,

    v.                        Case No. 20C0339

LEBBEUS BROWN, ET AL.,

       Defendants.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED FINDING OF FACT

Defendants Lebbeus Brown, Gary Boughton, Thomas Taylor, and Craig Tom through their attorneys, Wisconsin Attorney General Joshua L. Kaul, and Assistant Attorney General Rebecca A. Paulson, hereby respond to Plaintiff's Proposed Finding of Fact which has been re-typed verbatim, as follows:

1.     Growth & Development ("GD") is my religious beliefs and I've been a loyal believer of such religion for over 20 years. GD is a way of life for me and I'm not a "gang" member. See Jeremy Lockett Declaration ("Decl.") at paragraph ("par") '2.

**RESPONSE:** Defendants dispute that Growth & Development is a religion. It is regarded by Wisconsin Department of Corrections a cover for Gangster Disciple activity and considered an unsanctioned security threat group. (Brown Decl. ¶¶ 10, 19.) This dispute is not material. Even if Defendants are incorrect in their determination, their intention to punish Lockett for possession of security threat

group material was related to legitimate security concerns. *See Turner v. Boughton*, No. 17-CV-203-JDP, 2021 WL 1200597, at *17 (W.D. Wis. Mar. 30, 2021).

2.    Calling GD a "gang" implies that all persons who embrace the teachings are some how criminals and cannot be law abiding citizens. This is a false and prejudice narrative. It is equal to the <u>false-view</u> that all muslims are terrorists or that all catholics are child molesters. See Decl. at par 3.

**RESPONSE:** Defendants dispute the implication that Growth & Development is not a gang and that participation in Growth & Development is not dangerous to prison security. (*See* Brown Decl. ¶¶ 10, 19.) This dispute is not material. Even if Defendants are incorrect in their determination, their intention to punish Lockett for possession of security threat group material was related to legitimate security concerns. *See Turner*, No. 2021 WL 1200597, at *17.

3.    It was my intent to file a lawsuit in this court to contest the Department Of Corrections ("DOC") prejudicial narratives because it is these narratives that suppress my ability to even further educate myself about my religious beliefs. See Decl. at par 4.

**RESPONSE:** Defendants dispute Lockett intended to file a lawsuit about Growth and Development because three years passed since Lockett purchased the material at issue in this case, and he has still not filed any such lawsuit. Also, he does not need the Blueprints to file the lawsuit. He could file a religious lawsuit based on describing his own belief system. In any event, Lockett was punished for possession of the material because it appeared as though he and other inmates were attempting

to cloak gang activity in the guise of religion. (Brown Decl. ¶¶12, 21, 27; Tom Decl. ¶ 20.) But even if Defendants are incorrect about this conclusion, their intention to punish Lockett for possession of security threat group material was related to legitimate security concerns. *See Turner*, No. 2021 WL 1200597, at *17.

4.    GD does <u>not</u> teach anyone to be violent or be drug dealing participants nor does it teach or advocate crime. In fact, GD teaches the opposite and condemns criminal activity of all kinds. GD is religious in nature <u>to me as a individual</u> who worships my beliefs in the same fashion as those mainstream belief systems. See Decl. at par 5.

**RESPONSE:** Defendants object to the proposed finding because it is not supported by any evidence aside from Lockett's own declaration and he has not declared himself to be an expert or provided any material to show that what he is saying is true of Growth and Development. Notwithstanding and without waiving said objection, Defendants dispute Growth and Development is not a security risk. It is a cover for Gangster Disciple activity. (Brown Decl. ¶¶ 10, 12.) And the material at issue could have been used to recruit additional members into the dangerous security threat group. (Brown Decl. ¶ 14.)

5.    There is a record of other members of GD being convicted of crimes. However, those members actions are not reflections of every person who embrace the <u>written[1] teachings</u> of GD. See Decl. at par 6.

---

[1]  Actions that does not match the teachings (that's written) should not be attributed to the written teachings of GD.

**RESPONSE:** No dispute that other members' crimes are not necessarily reflections of every person who embraces the written teachings of Growth and Development. However, prison security is still justified in suppressing security threat group activity in the prison, including prohibiting the passing of the doctrine and applications forms that could be used to recruit new members to the gang. (*See* Brown Decl. ¶ 14.)

6.    The DOC's handling of GD members is to discipline believers. See Decl. at par 7.

**RESPONSE:** Defendants object to the proposed finding of fact because it relies only on a statement in Lockett's declaration that repeats the proposed fact. Lockett has not established foundation to be able to testify as to DOC's general handling of Growth and Development members outside of his own experience. Notwithstanding and without waiving said objection, no dispute Lockett was punished because he possessed Growth and Development material.

7.    The DOC's harassment of my religious views/beliefs is what prompted me to want to file a religious based lawsuit in court. See Decl. at par 8.

**RESPONSE:** Defendants object to the proposed finding of fact because there's no evidence Lockett wants to file a religious based lawsuit. He has not done so to date. Defendants further object because the proposed finding of fact is overly vague as to what Lockett means by "harassment of [his] religious views/beliefs." There is no evidence that any prison official "harassed" Lockett about his purported "religious"

views/beliefs, other than issuing Lockett a conduct report for the Growth and Development material at issue in this lawsuit.

8.    I began pursuing evidence to <u>dispute</u> the DOC's opinion that GD's teachings teach to kill, to sell drugs and to commit crimes of all kinds. It's this false-narrative that I knew that a court judge would shoot down after reviewing the actual written tenets of GD. See Decl. at par 9.

**RESPONSE:** No dispute as to Lockett's intention to prove Growth and Development is a noble organization. However, Defendants dispute that their understanding of the organization is a false narrative. Growth and Development was formed as a façade to cover up the true criminal activities of the Gangster Disciples. (Brown Decl. ¶¶ 10, 12.) Also, purchasing contraband is not an appropriate way to gain additional religious accommodations. If Lockett wants to seek additional religious accommodations, the proper procedure is to file a DOC-2075 Request for New Religious Practice. (West Decl. ¶¶ 15-21.)

9.    I was informed by Terrance Prude that the heart of my case that I intended to file (i.e. the religious lawsuit under the religious land use of institutionalized persons act) can be won by showing, in part, that the DOC's narrative (i.e. GD's teachings advocate illegal activities) is false. The written teachings, itself, would show that the tenets positivity and law abiding conduct actually oppose the DOC's narratives of GD. See Decl. at par 10.

**RESPONSE:** Defendants object to the proposed finding to the extent it relies on inadmissible hearsay. Notwithstanding and without waiving said objection, no

dispute Prude may have told Lockett what he should do to win a lawsuit. This does not mean that Growth and Development is a religion or that it is a safe organization to allow within Wisconsin prisons. It is not. (Brown Decl. ¶¶ 10, 12, 19.)

10.     I asked Lebbeus Brown the following: (A) am I allowed to have Growth & Development as my religion on the DOC-1090 religious preference form?; (B) Since you believe GD's teachings teach illegal conduct, would I get in trouble for having GD's teachings that condemns illegal conduct?; and (C) Am I allowed to buy evidence from a case for legal litigation purposes of Growth & Development's education which advocates positivity? See Decl. at par 11.

**RESPONSE:** Dispute. Lockett did not ask Brown these questions. (Brown Decl. ¶ 24.)

11.     Lebbeus Brown's answer was as follows: A) Yes you can. You just cannot have religious services performed by the chapel for Growth & Development; (B) No you would not. If the teachings condemn illegal conduct and advocates lawful ideas you can have it in furtherance of your religious views or beliefs; and (C) Yes you can. See Decl. at par 12.

**RESPONSE:** Dispute. Brown did not tell Lockett he could have material related to Growth and Development. (Brown Decl. ¶ 24.)

12.     With these answers, I used my personal account in the prisons business office to disburse $11.60 to the Western District Court Clerk in Prude v. Meli et al., #17-CV-336 to buy Docket#23. See Decl. at par 13.

**RESPONSE:** Dispute Brown gave these answers (Brown Decl. 24); no dispute Lockett purchased the document using $11.60 from his personal account.

13.     The evidence was mailed to me and when it arrived, as legal mail from the court, prison staff opened the envelope in front of me and inspected each page and after the inspection was completed handed the documents to me stating "here's your legal mail Mr. Lockett" and the staff left my cell. See Decl. at par 14.

**RESPONSE:** No dispute and not material.

14.     Weeks later, I had these documents taken from me by prison staff. I was written a disciplinary conduct report by Lebbeus Brown for possessing the legal evidence that he, himself, told me I can possess in my legal endeavors. See Decl. at par 15.

**RESPONSE:** No dispute Brown wrote a conduct report for possession of the documents. Dispute Brown told Lockett he could possess the material at issue. (Brown Decl. ¶ 24.)

15.     Brown told me that inmate Zachary Hayes also bought the same materials and pass the materials off to another inmate name Andre Tinnon and that when Mr. Tinnon tried to return it back is when staff inspected it and confiscated it. Brown stated the documents were tracked back to Terrance Prude's case in Prude v. Meli, Case#17-CV-336 and indicated to me that the Docket sheet in Prude v. Meli show that me and Mr. Hayes bought the materials and that since Mr. Tinnon and Mr. Hayes was being wrote up for possessing the materials that it would be unfair to not write me up too for possessing it. See Decl. at par 16.

**RESPONSE:** Defendants dispute this conversation occurred. It did not. (Brown Decl. ¶ 24.) This is not a genuine dispute, as no reasonable jury would believe Lockett's version of events. Lockett did not even ask Brown to appear as a witness at his disciplinary hearing. (Brown Decl. ¶ 22.) This is also not a material dispute. Regardless of the conversations Lockett alleges occurred, Brown issued the conduct report for the legitimate reason of suppressing gang activity. (Brown Decl. ¶¶ 8, 21.)

16.     I told/asked Brown why can't he just confiscate the materials instead of writing me a disciplinary report especially seeing I only possessed the evidentiary materials because he told me I could back in July (2018). Brown stated "yeah I know and I apologize but the other guys Hayes and Tinnon messed it up for you so everyone must get punished for possessing it. I'm sorry." See Decl. at par 17.

**RESPONSE:** Defendants dispute this conversation occurred. It did not. (Brown Decl. ¶ 24.) This is not a genuine dispute, as no reasonable jury would believe Lockett's version of events. Lockett did not even ask Brown to appear as a witness at his disciplinary hearing. (Brown Decl. ¶ 22.) This is also not a material dispute. Regardless of the conversations Lockett alleges occurred, Brown issued the conduct report for the legitimate reason of suppressing gang activity. (Brown Decl. ¶¶ 8, 21.)

17.     Mr. Prude already was documented by the DOC's religious preference database as being Growth & Development. See Exhibit#2 (Religious Prefernce DOS-1090 Form) attached. Also, I'm also documented as Growth & Development as well. See Exhibit#1 attached. See Decl. at par 18.

**RESPONSE:** No dispute Lockett identified his religious preference as Growth & Development, but this was not done until April 2020, which is after he filed the lawsuit in this case, and long after he purchased the Growth and Development material at issue. (West Decl. ¶ 11.)

18.    At my disciplinary hearing on Conduct Report#-3141599, I submitted the receipts which show that I paid for the evidentiary materials with the funds from my personal prison account. See Exhibit#5 (Record Of Witness Testimony DOC-84A) attached where it states in relevant part: "inmate Lockett does have a receipt enclosed for the purchased documents." See Decl. at par 19.

**RESPONSE:** No dispute and not material.

19.    Had I been told that DOC 303.24(1)(3) and 303.47(2)(A) prohibits the "type" of activity I was participating in I would not have bought the materials for the purpose of my litigation that I sought to pursue in court. See Decl. at par 20.

**RESPONSE:** Dispute that Lockett was told he was permitted to possess security threat group material. (Brown Decl. ¶ 24.) Nevertheless, Lockett was not allowed to proceed on a claim related to notice (Dkt. 14:3-4), and Lockett did not exhaust this procedural claim (DeGroot Decl. ¶ 12).

20.    I feel like I was set up by Brown to buy the documents seeing Brown told me I would not get into any trouble for having the materials for litigious reasons and then Brown himself filed charges against me for doing what he allowed me to do. See Decl. at par 21.

**RESPONSE:** Dispute Brown told Lockett he was permitted to possess security threat group material. (Brown Decl. ¶ 24.) This is not a material dispute. Regardless of the conversations Lockett alleges occurred, Brown issued the conduct report for the legitimate reason of suppressing gang activity. (Brown Decl. ¶¶ 8, 21.)

21.    At no time was I ever notified that I would be punished for buying documents from the court to use in a religious lawsuit as evidence. No policy forbids my conduct that I was engaged in in my preparation of filing a civil action. See Decl. at par 22.

**RESPONSE:** Dispute. The administrative code clearly prohibits Lockett from possessing security threat group material and participating in group petitions and resistance (gang activity). *See* Wis. Admin. Code § DOC 303.24.

22.    I also informed Captain Tom of the fact I was preparing a religious lawsuit and that the evidence was in support of such civil lawsuit. See Exhibit#4 (Major Disciplinary Hearing Reasons For Decision And Evidence Relied On DOC-84 Form) attached at "Inmate Statement" section. Mr. Tom found me guilty anyway. Id. at Exhibit #4, Page 1 of 2 (at "Decision" section). See Decl. at par 23.

**RESPONSE:** No dispute and not material. Tom did not find Lockett's defense credible. (Tom Decl. ¶ 20.)

23.    An expert, in a State civil action, name Clemens Bartollas provided a declaration, on behalf of a prisoner, testifying that the Growth & Development materials/education is protected materials and that some members of Growth & Development view these teachings as religious in nature. I ask the Court to take

"Judicial Notice" of the declaration filed in Prude et al. v. Milwaukee County et al., Case#14-CV-856-WED, at Dkt.112-4, at Pages 3-8 of 8, filed on 9/15/2015. See Decl. at par 26

**RESPONSE:** Defendants object to the extent that Lockett seeks to rely on this expert report but has not named this person as an expert in this case or given any indication that this person has been retained to participate as an expert on his behalf in this case. Defendants further object because the proposed finding of fact relies on inadmissible hearsay. Notwithstanding and without waiving said objections, no dispute this report was filed in another lawsuit. Strangely, the lawsuit had nothing to do with Growth & Development and the judge was not sure why the evidence was filed in that case. (*See* Prude et al. v. Milwaukee County et al., Case#14-CV-856-WED, at Dkt.120, p.7.) In any event, the opinion of this person is not material to whether prison officials were justified in confiscating the gang material in this instance. Brown reasonably believed the material was dangerous based on his own expertise and training. (Brown Decl. ¶¶ 2, 4, 10, 19.)

24.     Clemens Bartollas testified to the following in most relevant part: "An important issue is whether Growth and Development deserves First Amendment protections granted to organized religious groups? The fact is that there are those who hold to this vision as a form of religious expression. Or to express this in another way, should Growth and Development be treated differently from other prison gangs who are encountering a "no tolerance policy" today? What I do feel strongly about is that [Jeremy Lockett] has the right to have printed materials on Growth and

Development and that they must not be confiscated from him, as apparently they have. I believe that this is a violation of his first amendment rights. I also firmly hold that he should receive no disciplinary offenses for possessing these materials. It is understandable that prison administrations want to control the existence and spread of inmate gangs. But in my opinion, I do not hold it to be acceptable that they would deny Mr. [Lockett] the right to have Growth and Development materials or even more importantly that they would punish him in terms of disciplinary offenses for having such materials." See Prude et al. v. Milwaukee County et al., Case#14-CV- 856-WED (E.D. Wis. 2014) at Dkt.112-4, Page 8 of 8. I ask this court to take "judicial notice" of Mr. Bartollas expert testimony seeing the circumstances Mr. Bartollas testified to are identical to the circumstances in my case now before this Court. See Decl. at par 27.

**RESPONSE:** Defendants object to the extent that Lockett seeks to rely on this expert report but has not named this person as an expert in this case or given any indication that this person has been retained to participate as an expert on his behalf in this case. Defendants further object because the proposed finding of fact relies on inadmissible hearsay. Notwithstanding and without waiving said objections, no dispute this report was filed in another lawsuit. In any event, the opinion of this person is not material to whether prison officials were justified in confiscating the gang material in this instance. Brown reasonably believed the material was dangerous based on his own expertise and training. (Brown Decl. ¶¶ 2, 4, 10, 19.)

25.    I appealed both the findings of guilt & the penalty to the Warden Boughton explaining to him how my rights were violated under the 1st and 14th

amendments. However, Boughton affirmed the findings of guilt and the penalty imposed. See Exhibit#9(Appeal Of A Contested Hearing DOC-91 Form, Pages 1-2 of2) attached. See Decl. at par 28.

**RESPONSE:** No dispute Lockett filed an appeal. Defendants object to Lockett's allegation that Boughton affirmed the decision because there is no evidence to support this. To the contrary, Deputy Warden Jaeger affirmed the findings of the guilt and the disposition. (Boughton Decl. ¶ 10; DeGroot Decl. Ex. 100, at 17-18.)

26.     I spent time in segregation as a result of the penalty from November 16, 2018 through to May 8,2020(approximate) based on Conduct Report#3141599. This segregation was a combination of disciplinary segregation and administrative confinement segregation. When my disciplinary segregation time ended for Conduct Report# 3141599 my segregation placement was extended by administrative confinement ("AC") based on Conduct Report#3141599. This combination of segregation was 18 months. See Decl. at par 29.

**RESPONSE:** No dispute the conduct report was one of several factors which resulted in Lockett being placed in administrative confinement when his disciplinary separation time ended. *See* Wis. Admin. Code § DOC 308.04(1).

27.     The documentation (i.e. my religious teachings) are my ideas, thoughts, emotions, feelings transcribed on paper and to punish me for possessing my ideas, thoughts, emotions, feelings is, to me, an attack on my religious expression. A negative-narrative of my religious express- ion by non-believers should not be grounds to stomp out my religious expression/beliefs. See Decl. at par 30.

13

**RESPONSE:** Defendants dispute that Lockett was punished for his ideas, thoughts, emotions, or feelings. He was punished for possessing security threat group material that could be used to recruit additional members to Growth and Development. (Brown Decl. ¶ 21.)

28.    I, also, interpreted DOC 303.24(2)(b) to permit me to petition the Court regarding my legal redress as it relates to my religious beliefs because the statute states in relevant part: "The following activities are not prohibited: ... (b) Group petitions to the courts." See Decl. at par 31.

**RESPONSE:** No dispute that inmates are permitted to file group petitions with the court. Dispute Lockett believed he was permitted to possess security threat group material. Possessing the Growth and Development Blue Print is not the same as filing a group petition with a court.

29.    303.24(2)(b) "expressly exempts "group petitions to the courts" from its general prohibition on gang activity."[2] Although the religious materials are not technically "group petitions", the materials were being used for the purpose of petition[ing]" (i.e. seeking redress related to religious suppression) the court. I had no reason to believe that my desire to obtain evidence to support my "petition" would subject me to punishment under DOC 303.24(1)(2)(b) as I was. See Decl. at par 32.

**RESPONSE:** No dispute that group petitions to the court are permitted. Dispute Lockett truly believed he was allowed possess gang material under the guise of it being part of a group religious lawsuit.

---

[2] Jones v. Russell, 149 F. Supp. 3d 1095, 1105 (W.D. Wis. 2015).

30.     I was never informed of there being limitations on what documents I can used and/or obtain from a courts open records to use as evidence in a lawsuit. In fact, the DOC does not have any policy that support there being limits on "what" materials from a court (for litigation as evidence) are prohibited. The only restrictions on paperwork/documentation that exist is the "amount" of paperwork/documentation prisoners may have in-cell but that policy does not extend to the "content" of such legal materials. See Decl. at par 33.

**RESPONSE:** Dispute the only limits on legal materials would be the amount of paperwork. Legal material is not exempt from contraband rules. *See* Wis. Admin. Code § DOC 303.47.

31.     I was never notified that possessing the documents from the court would subject me to punishment under DOC 303.47(2)(a) especially seeing: (A) Brown told me I could possess the materials[3] ;  (B) No policy prohibits the possession; (C) The materials were sent to me from the court and I'd have no reason to believe that evidence/documentation sent to me from a court of law would subject me to punishment under 303.47 (2)(a); (D) A staff member opened the envelope the materials came in and reviewed each page prior to giving me the materials and found no contraband existed. See Decl. at par 34.

**RESPONSE:** Defendants dispute Brown told Lockett he could possess the materials. (Brown Decl. ¶ 24.) No dispute Lockett ordered the materials from court and managed to get them past other staff to get them into his possession. However,

---

[3] See above at par.[ 10-11].

Lockett still knew the material would be considered contraband because it is gang recruitment material. In any event Lockett was not allowed to proceed on a claim related to notice (Dkt. 14:3-4), and Lockett did not exhaust this procedural claim (DeGroot Decl. ¶ 12).

32.    I, also, relied on the DOC's policy which allows me access to legal materials to aid me in my legal claims. DOC 309.155(3)[4] allows me access to legal materials without placing restrictions on content of these legal materials. In fact, I was used my personal prison trust account to buy the materials from the court with the prisons permission as a "special legal need" to help me prepare my claim to file it in court. See Decl. at par 35.

**RESPONSE:** No dispute that the cited code provision does not restrict the content of legal materials. However, nothing in the code suggests that the prohibition on security threat group material does not apply to legal materials as well as any other material in an inmate's possession. *See* Wis. Admin. Code § DOC 303.24. In any event Lockett was not allowed to proceed on a claim related to notice (Dkt. 14:3-4), and Lockett did not exhaust this procedural claim (DeGroot Decl. ¶ 12).

33.    I, also, relied on DOC 309.155(1) which states: "It is the policy of the department to permit inmates reasonable access to the judicial process and to legal

---

[4] DOC 309.155(3) states in relevant part: "Special provisions shall be made to provide access to legal materials for inmates with a special legal need and for inmates with a special need, such as illiteracy. The department may employ the use of current technology in providing access to legal materials." The prison allowed me to use my money to obtain legal materials that the prison didn't have access t9. This access was a "special legal need".

materials, and to legal materials, and to afford a reasonable opportunity to prepare legal documents. Such access serves important rehabilitative goals and ensures effective procedures for raising and resolving complaints about institution practices and policies." By allowing me to use my personal funds to access the legal materials possessed by the Court was, in my opinion, in furtherance of this policy. See Decl. at par 36.

**RESPONSE:** Lockett knows that even legal material is subject to the same contraband rules as any other material in his possession. Labeling something as legal work does not enable a prisoner to circumvent the rule against possession of contraband. *See* Wis. Admin. Code § DOC 303.47. In any event Lockett was not allowed to proceed on a claim related to notice (Dkt. 14:3-4), and Lockett did not exhaust this procedural claim (DeGroot Decl. ¶ 12).

34.    Brown, himself, learned that I had possession of the materials when he was investigating inmates Zachary Hayes and Andre Tinnon. The investigation led Brown to a civil docket in Prude v. Meli, Case#17-CV-336 at Dkt. 28 (W.D. Wis.) where my name is listed as a non-party "requesting copy of dkt. 23." See Decl. at par 37.

**RESPONSE:** No dispute.

35.    Brown's Conduct Report ("CR") #3141599 corroborates this. See Exhibit#3 Page 2, at bulletin point 1-2, 20-23. See Decl. at par 38.

**RESPONSE:** No dispute and not material.

36.    I was never involved with allowing anyone to possess or review my legal materials while they were in my possession and I was not involved with anything related to Zachary Hayes or Andre Tinnon's conduct alleged by Brown. I do not even know Mr. Tinnon nor Mr. Hayes and only became aware of who they were as a result of the written report. When I was asked to turn my legal materials over I did so without concern because I previously had been told by Brown that it was fine to possess the materials as evidence. See Decl. at par 39.

**RESPONSE:** Defendants dispute that Lockett was not involved with "anything related to Zachary Hayes or Andre Tinnon's conduct." The dispute is not material. Given they were all found in possession of the same documents and Prude was undoubtedly helping them collect them. (Brown Decl. ¶¶ 19, 20.) In any event, Brown reasonably believed they were possessing and passing gang material. (Brown Decl. ¶¶ 19-21.)

37.    I exhausted all available administrative remedies prior to filing this lawsuit. Those remedies are as follows when a prisoner is only making substantive/constitutional challenges: (A) raise the substantive/constitutional challenges to the disciplinary hearing officers; and (B) Re-argue those same substantive/constitutional challenges on appeal to the Warden's office. The Warden's decision is final on the these issues and no further remedies are administratively available on these issues.[5] See Decl. at par 40.

---

[5] See DOC 303.82(4). Also, see Madyun v. Cook, 2008 U.S. Dist. Lexis 41359, 8-9 (W.D. Wis. 2008).

**RESPONSE:** Dispute the warden's decision is final as to all issues related to a conduct report. The warden's decision is only final as to sufficiency of the evidence. Wis. Admin. Code § DOC 303.82(4). Any alleged procedural deficiencies can then be pursued through the Inmate Complaint Review System (ICRS) outlined in Wis. Admin. Code Ch. DOC 310. *See* Wis. Admin. Code §§ DOC 310.05, 310.08(3).

38. If a prisoner also intends to challenge the procedure used during the disciplinary hearing they must file an inmate complaint under DOC 310 in order to seek judicial redress of those procedural errors. However, I'm not challenging the disciplinary hearing as being procedural error so DOC 310 does not apply. See Decl. at par 41.

**RESPONSE:** Dispute Lockett is not challenging any procedural aspect of the conduct report. Although the Court did not allow him to proceed on any procedural claim, Lockett's summary judgment motion argues he had no notice of the prohibited conduct, which is a procedural challenge.

39. I raised my 1st.and 14th[6] amendment constitutional issues to both the disciplinary hearing and on appeal to the Warden. See Exhibit#4 (at "INMATE STATEMENT: (summary)") and Exhibit#9 (Page 1-2 of 2). See Decl. at par 42.

**RESPONSE:** No dispute.

40. I was aware of the fact Terrance Prude had been registered with the DOC as being permitted to publish his religion (which is also my religion) as being Growth and Development via the DOC-1090 RELIGIOUS PREFERENCE form. See

---

[6] "Due process" challenges under the 14th amendment.

Exhibit#2. This, to me, show that the DOC was willing to acknowledge that Growth & Development was not a "gang" and was religious to me as an individual. It would make no sense to me to allow an inmate to register this religious preference but then forbid the person from studying and/or learning the tenets of that religion in the privacy of his cell. See Decl. at par 43.

**RESPONSE:** Dispute Prude or Lockett are "registered" to practice Growth and Development. Inmates may check "other" as a religion preference on their religious preference form. There is a space provided for inmates to provide additional religious affiliation/identification for DOC's data-collection purposes. This form field/space is completely optional. The inmates are given examples, such as if they chose the Native American/American Indian URG, they may indicate a specific tribe. (West Decl. ¶ 10.) "Growth and Development" or any other self-identified labels can certainly be written on the form, as in Lockett's case. But that does not mean that it is registered, recognized, sanctioned, authorized or approved as a religion by the Department of Corrections. (West Decl. ¶ 12.)

41.    The DOC-1090 Religious Preference form states in relevant part':1 "Participation in any religious activity is voluntary. Inmates must select an Umbrella Religion Group (URG) in order to participate in congregate religious services or study groups, or to acquire approved religious property (except books and literature). Inmates who choose <u>not</u> to complete this form or who select "Other" or "No Preference" cannot attend congregate religious programming or acquire personal religious property (other than books and literature) without prior approval from the

Chaplain/Designee. Regardless of religious preference designation, inmates may supplement available URG programming with individual spiritual practices and religious study permitted under DAI policies 306.61.01, 309.61.02 and 309.61.03." See attached Exhibit#1 See Decl. at par 44.

**RESPONSE:** No dispute.

42.    I was aware of the fact that since my religion was not one of the URG's that I could not "participate in congregate[d] religious services or study groups" but, I knew that I was permitted to obtain "books and literature" consistent with my religion just as the DOC-1090 form explains. This, also, put me on notice that my actions were permitted. See Decl. at par 45.

**RESPONSE**: Although inmates can possess religious books and literature, the content is still subject to other property policies, including the policy prohibiting security threat group materials and prohibiting contraband. Wis. Admin. Code § DOC 303.24, 303.57. Labeling an item as religious does not immunize it from the prohibitions on security threat group material.

Dated August 11, 2021.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Rebecca A. Paulson
REBECCA A. PAULSON
Assistant Attorney General

State Bar #1079833

Attorneys for Defendants.

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0278
(608) 294-2907 (Fax)
paulsonra@doj.state.wi.us