IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JEREMY LOCKETT,

    Plaintiff,

v.                                        Case No. 20C0339

LEBBEUS BROWN, ET AL.,

    Defendants.

## DECLARATION OF LEBBEUS BROWN

I, **LEBBEUS BROWN**, declare pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the following is true and correct.

1. I make this declaration based upon my personal knowledge and review of the records maintained in the ordinary course of business at the Department of Corrections (Corrections).

2. I was formerly employed by Corrections at the Wisconsin Secure Program Facility (WSPF). I was employed at WSPF from 2000 until my retirement in August 2020. I held various positions over the years at WSPF, including Lieutenant and Captain, and was the Security Threat Groups (STG) Coordinator for 13 years, as well as the Investigations Captain. Between 2016 until my retirement, and at times relevant to this case, I was the Unit Manager on Alpha unit.

3. In my former capacity as a Unit Manager at WSPF, I was responsible for the daily operations of Alpha Unit, including ensuring the wellbeing of the

inmates on the unit, housing assignments, making sure health services appointments, psychological services appointments, education programming and recreation were scheduled and running efficiently. I also ran the PACE Program in restrictive housing for inmates in administrative confinement status to work their way back into general population.

4.  I have received specialized training on the identification and operation of prison and street gangs, and have the ability to recognize gang-related activities. Specific training and additional experience which I have had in gang-related topics include the following:

- **1987**- Milwaukee County police training in gang identification.
- **1990-2000** - Assisted in Gang identification for the LaCrosse County Juvenile Facility.
- **2/25/2003 -** Multi-jurisdictional Counter Task Force Training Criminal Street Gangs
- **4/3/2003** - Disruptive Groups certification training and test for the Department of Corrections.
- **4/3/2003** - Disruptive Groups Coordinator and trainer in Disruptive Groups for the Wisconsin Secure Program Facility.
- **6/17/2003 -** Multi-jurisdictional Counter Task Force Training Criminal Street Gangs 2.
- **4/26/2004** - Great Lakes international Gang Investigator's Coalition (GLIGIC) training.
- **10/2004** - Community gang awareness training for Grant County Department of Social Services.
- **1/25/2005 -**Department of Corrections training for trainers.
- **4/29/2005** - Great Lakes International Gang Investigators Coalition (GLIGIC) training.
- **10/21/2005** - Great Lakes International Gang Investigators Coalition (GLIGIC) training.
- **2005** – Department of Corrections quarterly Disruptive Groups meetings and training.
- **4/17/2006** - Criminal Street Gangs training.
- **4/21/2006** - Great Lakes International Gang Investigators Coalition (GLIGIC) training.
- **10/20/2006** - Great Lakes International Gang Investigators Coalition (GLIGIC) training.
- **2006** – Department of Corrections quarterly Disruptive Groups meetings and training.
- **4/16/2007** - Community training for the Belmont High School in gang recognition.
- **6/11/2007** - Great Lakes International Gang Investigators Coalition (GLIGIC) training.
- **2007 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training.
- **3/12/2008 -** Training given to Seneca High School
- **4/18/2008 -** Great Lakes International Gang Investigators Coalition (GLIGIC) training
- **2008 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training.
- **2/13/2009 -** Northeast Counterdrug Training Center at Volk field in Terrorism.
- **5/12/2009 -** Training by Chavez gang officer from Madison, WI.

- **2009 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training.
- **2010 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training.
- **6/23/2011 -** Gang training given to Correctional Officer at PDCI.
- **8/17/2011-** Southern Poverty Law Center training Hate in America
- **2011-** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training.
- **1/6/2012 -** Training given to North Crawford High School.
- **3/8/2012 -** Training given to Southwest Wisconsin Technical College in Gangs in Wisconsin.
- **2012 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training
- **2013 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training
- **7/9/2013 -** Gang training given to Correctional Officer at WSPF.
- **8/14/2013 -** Midwest Gang Investigators training on Outlaw MC
- **2014 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training
- **9/24/2014-** Attend training Anti-Gang Summit
- **2015 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training
- **1/6/2015 -** Gang training given to Correctional Officer at WSPF
- **6/2/2015 -** Gang training given to Correctional Officer at WSPF
- **6/9/2015 -** Gang training given to Correctional Officer at WSPF
- **2016 -** Department of Corrections quarterly Security Threat Groups Coordinators meetings and training
- **11/9/2016 -** Attended Anti-Gang Summit training

Additionally, I was a member of Great Lakes International Gang Investigator's Coalition (GLIGIC).

5. Several of the Department of Corrections trainings included information on identifying the differences between religious activity and gang-related activity in prison.

6. It is my understanding that Jeremy Lockett (DOC#511912) has been allowed to proceed on a claim that I retaliated against him by issuing him a conduct report for possessing material that was allegedly going to be used as evidence in a lawsuit about his religious rights.

3

7. There is a heavy presence of security threat group/gang members in Wisconsin Corrections system. As many as 40-50 percent of inmates housed in the maximum-security institutions are identified as being affiliated with a security threat group.

8. Security threat groups play a role in many of the riot situations, criminal activity, drug use, and violence that takes place in the institutions. Gang activity is detrimental to the individual inmates and their rehabilitation efforts, as it makes some inmates feel unsafe in a prison environment, and some are physically endangered given the presence of rival groups. Recruitment efforts for gangs are common in prison. Gangs often undermine prison authority and take an oppositional stance against rules and prison administration. Members use their contacts on the outside to assist in introducing contraband in the facilities. High-ranking gang leaders have successfully run these criminal enterprises within institution walls. For these reasons and more, it is imperative that Corrections staff try to monitor and prevent the spread of security threat group activity in order to maintain a safe and secure environment for the inmates, staff, visitors, and the community.

9. In September 2018, I was given documents to review by staff that were found being passed between inmates. The documents included: 1) Rod Emery's *The Blueprint: From Gangster Disciple to Growth and Development*; and 2) *Blueprint of the New Concept*, and other papers (hereinafter referred to collectively as "Blueprints"). The Blueprints contained information on the structure, rules and operation of the security threat group, Gangster Disciples.

10. I am familiar with the phrase "Growth and Development" being used as a cover for Gangster Disciple activity. It is my understanding that the chairman of the Gangster Disciples, Larry Hoover, set up Growth and Development as a facade to conceal illegal gang activities from law enforcement. Hoover used the Growth and Development organization to create nonprofits, register voters, participate in charities for children, etc. However, the entire time, Hoover was using this legitimate organization to funnel Gangster Disciple drug money, and to reach more children and attract them to his criminal gang.

11. Hoover also believed the re-branding of Gangster Disciples would help him to be paroled once he became eligible. However, authorities saw through it, and recognized it as a ploy. The federal government, skeptical of Hoover's motives, launched an undercover investigation which resulted in an indictment on drug conspiracy charges. Hoover was ultimately sentenced to six life sentences and is currently serving his sentence at a supermax prison in Colorado.

12. Although gang members continue to try and conceal the true nature of Gangster Disciples by using the Growth and Development cover, the two organizations are one in the same. Growth and Development was and is a facade used to hide the illegal activities of the Gangster Disciples.

13. The Gangster Disciples use the six-pointed star symbol, with each point representing love, life, loyalty, knowledge, wisdom and understanding. These six points are the same as the "Growth and Development" six principles discussed in the materials. The Blueprints I reviewed contained many references to the Gangster

5

Disciples, such as information on its history, structure, rules, creed, violations for misconduct, member rankings, and a picture of Larry Hoover.

14. Circulation of the Blueprints in the institutions could be used for recruitment purposes and for teaching inmates about the Gangster Disciples.

15. The Blueprints include "The Sixteen Laws." The first law is "Silence & Secrecy: No member shall give any information or discuss any matters concerning any member or functions of this organization with anyone who is not a standing member." (Dkt. 23-1:68.)

16  There are various recitations in the materials which would be used to build loyalty and allegiance to Gangster Disciples, including "The Hoover Prayer, which includes the line: "Just G's and D's; No 5's or P's; No V's No L's . . ." (Dkt. 23-1:94.) The reference to No 5's or P's and No V's No L's is a reference to rival gangs to the Gangster Disciples. "Just G's and D's" is the Gangster Disciples whose symbol is the 6-pointed star and who identify with the Folk Nation. "No 5's or P's" is in reference to the People Nation with the 5-pointed star symbol, and the enemy of the Folk Nation and Gangster Disciples. "No V's No L's" is the People Nation Vice Lords.

17  Other recitations reference Gangster Disciples and incorporate imagery of putting a gang member to rest with a six-pointed star and two shotguns upon his chest. (Dkt. 23-1:95.)

18  The materials include information about collection of dues (Dkt. 23-1:100); house policies, including consequences (Dkt. 23-1:105); chain of command (Dkt. 23-1:107); and a membership application. (Dkt. 23-1:116.)

19 While I worked at WSPF, there were a significant number of inmates affiliated with Growth and Development and/or Gangster Disciple security threat group. Both Gangster Disciples and Growth and Development are unsanctioned, security threat groups in Wisconsin institutions. These groups at WSPF have a history of coercion, intimidation, threats and starting disturbances within the prison. They continually violate Corrections' rules, by engaging in fighting, gambling, extortion, and sanctioning of their own members (which could be anything from fines to physical confrontation). They pose a high risk to the safety of the institution, staff, and other inmates. One of the inmates involved in possessing these documents, Terrance Prude, is known as being a high-ranking member of the Gangster Disciples. (*See* Prude v. Meli, et al. WD Case 17CV336 Dkt. 23.)

20 Cell searches were conducted, and it was determined that several inmates were involved in the passing or possession of these Growth and Development materials. I also became aware that the materials were entered onto the docket in one of Prude's federal lawsuits, which makes it available to the public. Other inmates who were non-parties to the lawsuit were sending in requests to the Court seeking copies, including Lockett.

21 Due to the content and nature of the Blueprints, I determined that the material was contraband, and on October 4, 2018, I issued Lockett Conduct Report #3141599 for violating Wis. Admin. Code §§ DOC 303.24 "Group Resistance and Petitions" and DOC 303.47 "Possession of Contraband-Miscellaneous." (*See* DeGroot Decl. Ex. 100, at 1-4.) I do not recall Lockett ever telling me that he was using it to

7

file a lawsuit about his religious rights; regardless, the material was contraband and not allowed in prison. The conduct report was not issued to Lockett because he was allegedly attempting to file a lawsuit.

22  After issuing the conduct report, I had no further involvement with the disciplinary hearing or appeal. Lockett never requested me as a witness at the disciplinary hearing.

23  It is my understanding Lockett alleges that I told him he was allowed to have Growth and Development as his religion on a DOC-1090 Religious Preference form and that he would not get into trouble for possessing such material if it was for religious purposes and it condemns illegal conduct. He also alleges that I told him it would be unfair to not write him a conduct report, when I was issuing other inmates conduct reports for possessing the same material. (*See* Dkt. 29 ¶¶11, 12, 16.)

24  I do not recall a conversation with Lockett about any of the above. However, I would never tell any inmate that he can possess security threat group material, and that he would not get into trouble if he did. As the Security Threat Group coordinator at that time, there is no way that I would knowingly allow security threat group material to come into the institution. If Lockett thinks I said anything that condoned his purchasing of the Blueprints from Prude's civil lawsuit's docket, either I misunderstood what Lockett was asking, or he misunderstood my response. However, I believe he has completed fabricated this conversation that he references.

25  If an inmate wishes to gain approval for a new religious practice not currently allowed, he should not just go order the item and then try to file a lawsuit

8

about it. DAI policies require an inmate to request new religious materials not currently allowed by submitting a DOC-2075 Request for New Religious Practice form to the chaplain.

26   I have seen inmates indicate their religious preference as "Growth and Development" on a DOC-1090 Religious Preference form. However, it is my understanding that they list whatever they want on the line to indicate their religion. Not every "religion" listed by an inmate is recognized or sanctioned by Corrections, including Growth and Development, which is why Corrections created the Umbrella Religion Group structure. Growth and Development is not one of the Umbrella Religion Groups.

27   Inmates frequently use religious services and literature, as well as legal mail, to cover up security threat group activity. No matter what religion an inmate lists on the DOC-1090, security threat group material is not allowed at the institution and is considered contraband.

> *Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the statements in the declaration are true and correct and based upon my personal knowledge.*
>
> Executed this <u>6th</u> day of <u>August</u>, 2021.
>
> s/ Lebbeus Brown
> Lebbeus Brown