IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEREMY LOCKETT,

   Plaintiff,

  v.          Case No. 20C0339

LEBBEUS BROWN, ET AL.,

   Defendants.

---

## DECLARATION OF CRAIG TOM

---

  I, **CRAIG TOM**, declare pursuant to 28 U.S.C. § 1746 and under the penalty of perjury, that the following is true and correct.

  1. I make this declaration based upon my personal knowledge and review of the records maintained in the ordinary course of business at the Department of Corrections (Corrections).

  2. I am currently employed by Corrections as a Supervising Officer 2 (also referred to as Captain) at the Wisconsin Secure Program Facility (WSPF). I have held this position since May 27, 2018. I was previously employed as a Supervising Officer 1 (Lieutenant) since October 15, 2006. I have been employed at WSPF since 1999.

  3. In my capacity as a Captain at WSPF, I am generally responsible for the supervision and evaluation of correctional officers; inspecting areas throughout the institution for security; and supervising inmates. As a Captain, I am rarely assigned as the hearing officer for due process hearings on major conduct reports, but fill-in

for the assigned hearing officer when needed. Any security supervisor may act as the hearing officer as long as they have no conflicts. However, when I was a lieutenant, I was assigned as the primary hearing officer for approximately five years.

4.    It is my understanding that Jeremy Lockett (DOC#511912) has been allowed to proceed on claims that I violated his Fourteenth Amendment rights and retaliated against him by finding him guilty of the charges in Conduct Report 3141599 related to him being in possession of security threat group material that was allegedly going to be used as evidence for a lawsuit.

5.    On October 4, 2018, Lockett was issued Conduct Report #3141599 for violating Wis. Admin. Code §§ DOC 303.24 "Group Resistance and Petitions" and DOC 303.47 "Possession of Contraband-Miscellaneous." According to the conduct report, Lockett was in possession of security threat group material and was involved in the distribution of the contraband throughout the facility. (*See* DeGroot Decl. Ex. 100, at 1-4.)

6.    I was assigned as the hearing officer for the disciplinary hearing related to Conduct Report #3141599. I had no knowledge of this conduct report prior to being assigned as the hearing officer and I was not involved in any part of the investigation leading up to the issuance of the conduct report.

7.    I had no prior knowledge of any lawsuit that Lockett was allegedly going to file related to his religious rights.

8.  A disciplinary hearing was held on November 16, 2018. The disciplinary hearing was conducted pursuant to the rules in Wisconsin Administrative Code Chapter DOC 303. (DeGroot Decl. Ex. 100, at 5-6.)

9.  As the hearing officer for this conduct report, I thoroughly reviewed all evidence submitted with the conduct report, including Lockett's verbal statement, testimony from Lockett's witness, a paper copy of a receipt, the review from Security Threat Groups Specialist Lange, and the physical evidence which was removed from Lockett's and two other inmates' cells. (DeGroot Decl. Ex. 100, at 5-6, 7, 9, 14, 16.)

10.  The conduct report was issued by former Unit Manager and Security Threat Groups Coordinator Lebbeus Brown. In summary, Brown wrote that a document entitled "The Blueprint; From Gangster Disciple to Growth and Development" (hereinafter "Blueprint") was found being passed between inmates at WSPF. Brown was given the document for review and used his knowledge of security threat groups to determine that the Blueprint was Gangster Disciple material and was not allowed in the institution. The Blueprint contained the rules, creeds and structure of the Gangster Disciple gang, and information about its chairman and leader Larry Hoover. The Gangster Disciples have used the name "Growth and Development" but continue with the same criminal activities and teachings. There were envelopes and correspondence also found with the document, including letters from inmates Lockett and Zachary Hayes, each requesting copies of the document, which has been filed in one of inmate Terrance Prude's lawsuits. Therefore, cell

searches were conducted and several inmates, including Lockett, had the Blueprint and Gangster Disciple material in their possession. (DeGroot Decl. Ex. 100, at 1-4.)

11.     For his statement, Lockett stated that he purchased material via open records request from the docket of one of Prude's civil lawsuits so that he could use the material as evidence in filing a lawsuit against Corrections staff for harassing him about his religion. He stated he filled out a disbursement request and sent it to the business office so that money could be taken out of his account and a check could be sent to the court for the requested copies to be made. The court then sent him the requested material. Staff who initially scanned the mail he received from the court gave him the material, and then it was later confiscated. (DeGroot Decl. Ex. 100, at 5.)

12.     When I asked Lockett if he had anything to add to his statement, he stated that he did not. (DeGroot Decl. Ex. 100, at 5.)

13.     Lockett never mentioned anything in his statement that Unit Manager Lebbeus Brown allegedly told him that he could possess materials related to "Growth and Development" and that he would not get in trouble.

14.     Prior to the hearing, Lockett submitted a DOC-73 "Inmate's Request for Attendance of Witness/Evidence" form requesting inmate Prude as a witness, and that he would like to submit a written statement and his receipt. (DeGroot Decl. Ex. 100, at 10.)

15.     Prude was allowed to attend the hearing and was asked questions. Prude stated that the material was from a pending lawsuit he had in Court, that he helped

Lockett with requesting the materials and submitting the request, and that the material was the "teachings of [their] religion." (DeGroot Decl. Ex. 100, at 7.)

16.     The hearing officer may review and evaluate the requested evidence at the time of the hearing, if they so choose. Although the receipts that Lockett requested as evidence were denied by Captain Leffler, I chose to allow and consider them at the hearing. After reviewing the receipts, I agree with Captain Leffler that the receipts were not relevant for the conduct report. Even though Lockett paid for the documents, it is still considered contraband as it is security threat group material and is not allowed. Inmates receive contraband items in the mail all the time which are not allowed, no matter who paid for them. (DeGroot Decl. Ex. 100, at 10, 14.)

17.     Lockett did not request to have Unit Manager Brown as a witness at the hearing. If Brown had told Lockett that he would not get in trouble for possessing the material, then it would make sense to ask that Brown be a witness. (DeGroot Decl. Ex. 100, at 10.)

18.     Lockett was appointed an advocate for the hearing, Sergeant Winger, and it was determined that there was no conflict of interest with this appointment. The advocate's role is to raise any additional questions or make a statement on behalf of the inmate pertaining to the charges or the investigation. Sergeant Winger did not have anything additional to add but noted that Lockett did have a receipt for the documents he purchased from the court. (DeGroot Decl. Ex. 100, at 7.)

19.     After a thorough review of all of the documentation and evidence related to Conduct Report #3141599, I determined that Lockett was guilty of violating Wis.

Admin. Code §§ DOC 303.24 and 303.47 and issued my decision the same day. The material he possessed was related to a security threat group which is considered contraband at the institution. Growth and Development is not a recognized religion in Corrections. Lockett admits that he purchased the document and denies that it is related to security threat group, but I am aware that inmates try to conceal gang activity in prison by using legal correspondence and religion as a cover up. Brown is very knowledgeable about security threat groups as he had been a Security Threat Group Coordinator for years, and I had no reason to question his determination that the Blueprint was related to the Gangster Disciples and unsanctioned activity. The document was further reviewed by Security Threat Groups Specialist Sgt. Lange, who also agreed that the document was associated with a security threat group. (DeGroot Decl. Ex. 100, at 5-6.)

20.    I believe that Lockett and Prude gave self-serving and rehearsed statements in an effort to make staff believe the Blueprint was in fact a document about their religion and to be used in lawsuit. I did not find either inmate credible. Lockett's witness, Prude, is a well-known leader of the Gangster Disciple gang throughout Wisconsin Corrections and both inmates are aware that involvement in group resistance and petitions is not allowed in prison.

21.    Pursuant to the Schedule of Penalties in Wis. Admin. Code § 303.72, and based on the seriousness of the charges for which Lockett was found guilty, I issued a disposition of 120 days in disciplinary separation. (DeGroot Decl. Ex. 100, at 6.)

22.    A hearing officer may only impose a sentence at a disciplinary hearing which does not exceed the duration shown in the Schedule of Penalties. The maximum penalty I was authorized to impose was 360 days of disciplinary separation.

23.    In issuing Lockett his disposition of 120 days in disciplinary separation, I took into consideration many factors, including Lockett's overall disciplinary record in the institution, the risk of disruption to the institution, staff and community if the material were to be distributed, and the risk of possible injury. Gangs in prison have been known to incite riots, be violent and conduct criminal activities. (DeGroot Decl. Ex. 100, at 6.)

24.    Lt. Thomas Taylor was not involved in Lockett's disciplinary hearing related to Conduct Report #3141599. He was not the hearing officer and had no involvement in finding Lockett guilty of the charges.

25.    Although Lockett was issued 120 days in disciplinary separation, a review of Lockett's status changes shows that Lockett was in disciplinary separation only 54 days, from November 16, 2018, to January 9, 2019, when he was re-placed on administrative confinement status. Lockett had been in administrative confinement since May 30, 2018 (although he spent a few days in clinical observation status). (DeGroot Decl. Ex. 101, at 1-2.)

26.    All inmates entering Corrections are provided with a copy of Wis. Admin. Code § DOC 303 related to inmate discipline and rule violations during intake. The Code is also always available in the libraries or upon request.

27.    I am not personally aware of how the Blueprint got on the docket in one of Prude's lawsuits and how it was made available to inmates via an open records request; however, Lockett was not punished here due to him making an open records request to obtain this document. He was punished due to possessing security threat group material and contraband and he was made well aware of the implications of possessing such material in the institution.

*Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the statements in the declaration are true and correct and based upon my personal knowledge.*

Executed this <u>27</u> day of July, 2021.


<u>s/ Craig Tom</u>
Craig Tom